**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**R. DAKIN AND COMPANY, Respondent.**

No. 71–2424.

United States Court of Appeals, Ninth Circuit.

April 2, 1973.

Stephen Yohay (argued), N.L.R.B., Roy Hoffman, Region 20 Director, N.L.R.B., San Francisco, Cal., Peter Nash, Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, M. Davison, Deputy Ass. Gen. Counsel, Michael Barkow, Atty., N.L.R.B., Washington, D. C., for petitioner.

Wesley J. Fastiff (argued), Littler, Mendelson & Fastiff, San Francisco, Cal., Robert M. Lieber, Stanley H. Neyhart, Duane B. Beeson, Brundage, Neyhart, Grodin & Beeson, San Francisco, Cal., for respondent.

Before KOELSCH, BROWNING and CARTER, Circuit Judges.

KOELSCH, Circuit Judge.

The National Labor Relations Board seeks enforcement of its order directing R. Dakin and Company to bargain with Warehouse Union Local No. 860.

The record discloses that the Union filed three representation (election) petitions within a period of three months; that it withdrew the first two, and that the third eventuated in the election which the Union won. All three petitions were identical in content. In due time Dakin filed objections with the Board; it sought to have the election set aside on grounds of Union misconduct.

Pursuant to Board Rules and Regulations, 29 C.F.R. 102.69(c), the Regional Director conducted an administrative investigation into the matter. He noted in his Report on Objections "that the investigation has raised a substantial and material issue of fact—"but he refused to consider the objections on the merits, because all the misconduct allegedly occurred prior to the last petition—which he deemed the operative one. As support for this procedure he expressly relied upon Ideal Electric & Mfg. Co. (134 N.L.R.B. 1275 (1961)), a case in which the Board had ruled "that the date of filing of the petition . . . should be the cutoff time in considering alleged objectionable conduct in contested cases."[1]

Dakin filed timely exceptions to the Regional Director's Report; it urged that the "cut off" date should be the date of the filing of the first representation petition; and in the alternative that the Ideal Electric rule, as applied in this matter, was arbitrary. The Board, however, summarily adopted the Regional Director's findings and recommendations, approved his rationale, and certified the Union as bargaining representative for Dakin's employees. Dakin nevertheless refused to bargain. A complaint issued. Dakin again urged that a hearing should be held upon its objections to the election. But the Board, like the Regional Director, invoked the

---

1. The Regional Director opined that "while the employer's argument has some appeal, the *Ideal Electric* holding appears to state a mechanical rule and no exceptions to its application appear to be contemplated. Accordingly, as the undersigned is bound by the Board's decision in *Ideal Electric*, it is concluded that objections one through six are not meritorious."

Ideal Electric Rule and refused to entertain them.[2] (181 N.L.R.B. 572).

Before initiating this enforcement proceeding the Board sua sponte, "wish[ing] to have the benefit of record testimony concerning allegations of conduct which transpired following October 14, 1968, the date on which the first petition was filed . . ." reopened the case. The trial examiner, to whom the matter was referred for hearing, found that all the alleged Union misconduct antedated the third election petition and that the Union's withdrawal of the earlier petitions was not in bad faith and to "clean the slate." Thereupon, the Board adopted the examiner's findings and reaffirmed its decision.[3]

■ The record supports the Board's adopted findings concerning the two initial petitions. Thus the question remains, did the Board err in "mechanically" applying the Ideal Electric rule?

We conclude that the answer is yes. Ideal Electric makes clear that the rule is simply an evidentiary device calculated to render irrelevant upon a post election contest, conduct "too remote" to have interfered with the employees' exercise of the free choice guaranteed by Sec. 7 of the Act.

In a proper case such a rule undoubtedly serves a worthwhile purpose. But if its predicate is lacking, then an indiscriminate application serves as a blanket exclusion of all evidence from consideration without regard to materiality.

We of course recognize "the function of the Labor Board as one of those agencies presumably equipped or informed by experience to deal with a specialized field of knowledge, whose findings within that field carry the authority of an expertness which courts do not possess and therefore must respect." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951). Consistent with this principle, we would pay great deference to a Board created cut-off date which is applied to some types of pre-election misconduct, even though we might believe that the lapse of time was not of sufficient length to render that conduct innocuous. But, we are not prepared to give our approval to a rule which flatly bars the consideration of all pre-petition misconduct, particularly where, as here, the Regional Director concluded, and the Board affirmed, that such alleged misconduct "raised a substantial and material issue of fact" regarding the validity of the election. The Tenth Circuit shares this view: N.L.R.B. v. Lawrence Typographical Union, 376 F.2d 643 (10th Cir. 1967).

The Order is set aside and the matter is remanded to the Board for further proceedings.

2. It would be improper for us to distinguish Ideal Electric, where the Board has itself declared the decision controlling.

The Board has not always regarded cut-off dates as inflexible. In fact, Ideal Electric is a decision in which the Board modified its then current cut-off rule (as previously fixed in F. W. Woolworth Co., 109 N.L.R.B. 1446) to accommodate evidence of pre-election misconduct which would have been otherwise inadmissible.

Nor has the Board always abided by the Ideal Electric rule. Thus in Weather Seal, Inc., 161 N.L.R.B. 1226 (1966) the Board, although expressly finding that "almost all" the acts which constituted employee coercion antedated "the critical period prior to the election" (citing Ideal Electric), nevertheless considered those acts in deciding to set aside the election.

3. Dakin's contention that enforcement of the Board's order should be denied because "the presentation of the Company's case after almost two years of administrative intransigence was hopelessly impaired," is not persuasive.

At the hearing, Dakin's counsel urged that the delay had rendered unavailable several prospective witnesses, but he also stated that those persons would be merely "corroborating witnesses . . . ."

Not only does Dakin fail to specify any actual prejudice, but we think it would be extremely unlikely that it could do so, for the witness to whom the Union's coercive statements were allegedly made was present and testified and was credited by the trial examiner.